## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NCR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 14-779-SLR |
| | ) | |
| AUTOMATED TRANSACTIONS, LLC | ) | |
| and TRANSACTION HOLDINGS LTD., | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NAUTILUS HYOSUNG AMERICA, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 14-1189-SLR |
| | ) | |
| AUTOMATED TRANSACTIONS LLC | ) | |
| and TRANSACTION HOLDINGS LTD., | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

At Wilmington this 30th day of March, 2015, having reviewed defendants'

motions to dismiss for lack of subject matter jurisdiction, and the papers filed in

connection therewith;

IT IS ORDERED that said motions (Civ. No. 14-779, D.I. 13; Civ. No. 14-1189,

D.I. 8) are granted, for the reasons that follow:

1. **Background.** Plaintiffs NCR Corporation ("NCR") and Nautilus Hyosung America ("NHA") (collectively, "plaintiffs") have filed declaratory judgment actions against defendants Automated Transactions, LLC and Transaction Holdings Ltd. (collectively, "ATL" or "defendants") in an effort to invalidate 14 of the 28 patents in ATL's patent family portfolio which relate to automated teller machines ("ATMs").[1] The above captioned lawsuits were filed at about the same time that ATL moved to dismiss all of its pending infringement cases, which an MDL Order had consolidated before this Court. (Civ. No. 13-MD-2429-SLR).[2] There is no dispute that the MDL litigation resulted from ATL's patent enforcement campaign against scores of ATM users, including banks, financial service providers, credit unions, and restaurants. Plaintiffs both manufacture ATMs, and contend that ATL's infringement contentions in the MDL cases were based on the functionality of plaintiffs' ATMs as disclosed in their documents produced in the MDL cases. Both plaintiffs have had customers sued by ATL and, according to NCR, "there are thousands of them in the United States using the same accused ATMs with the same accused functionality." (D.I. 16 at 2) Although "ATL has offered to grant covenants not to sue any NCR customer that has ever received a letter alleging any infringement of ATL's patents NCR alleges is an imminent

---

[1]Ironically, these declaratory judgment plaintiffs (unlike the typical corporate defendant) are pursuing litigation, and it is the declaratory judgment defendants who are suggesting that the instant litigation be dismissed in favor of the administrative remedies available through the Patent & Trademark Office. Where, as here, the validity of the patents-in-suit will be the focus of the litigation, it actually would make more sense for the PTO to take the laboring oar in this regard.

[2]All of the cases initiated by ATL have been dismissed by joint stipulation of the parties and the MDL has been terminated.

threat" (Civ. No. 14-779, D.I. 15, ¶ 8), ATL has not offered to NCR itself (or to NHA)
covenants not to sue. ATL has attempted to sell the patents-in-suit,[3] thus far
unsuccessfully, and its managing member (also the named inventor on the patents) has
represented that "ATL has no plans to initiate any legal proceedings related to its patent
portfolio." (*Id.* at ¶ 6)

2. **Standard of review.** Under the Supreme Court's controlling decision in
*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the test to be applied by this
court in deciding ATL's motions to dismiss is "whether the facts alleged, under all the
circumstances, show that there is a substantial controversy, between parties having
adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a
declaratory judgement." *Id.* at 127 (citation omitted). The Supreme Court
acknowledged that this inquiry will necessarily be fact specific and must be made in
consideration of all the relevant circumstances. Consequently, the cases in this area
"do not draw the brightest of lines between those declaratory judgment actions that
satisfy the case-or-controversy requirement and those that do not." *Id.*

3. **Contentions.** Defendants argue that both declaratory judgment complaints
should be dismissed pursuant to Fed. R. Cic. P. 12(b)(1) because,

> in light of the totality of the circumstances, there is no immediacy to any
> threat posed by ATL to [plaintiffs or their customers]. ATL has wound
> down its litigation efforts. The defendants in all pending ATL litigation
> have received covenants not to sue from ATL. ATL has offered to grant
> covenants not to sue to any [of plaintiffs'] customers who may have

---

[3]ATL has asserted that it has "converted its business model and itself from being
an entity that asserts patents to one that is in the market to sell its patents. Because
ATL is now a seller of patents, ATL and NCR do not presently have 'adverse legal
interests that warrant judicial resolution.'" (Civ. No. 14-779, D.I. 14 at 4)

3

received threatening letters from ATL in the past. Most importantly, ATL has decided to sell its patent portfolio rather than engage in any further enforcement efforts.

(Civ. No. 14-779, D.I. 14 at 3-4) Plaintiffs counter that "the undisputed and indisputable facts demonstrate a longstanding, unresolved, substantial controversy between ATL and [plaintiffs] concerning the patents-in-suit as applied to [ATMs] manufactured and sold by" plaintiffs. (*Id.*, D.I. 16 at 1)

4. **Conclusion.** In light of the totality of the circumstances,[4] and consistent with the need to preserve scarce judicial resources,[5] defendants' motions to dismiss the pending declaratory judgment actions are granted, without prejudice to plaintiffs' renewal of this litigation should defendants (or any other owner of the patents-in-suit) choose to again enforce these patents against NCR, NHA, or any of their customers.

_____
United States District Judge

_____

[4]Which would leave the court to determine the validity of the patents-in-suit without a true adversarial governor.

[5]There truly is no way of predicting whether any one will ever attempt to enforce these patents again.

4